*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *ROBERT LEE NELSON,* | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| *v.* | ) | *No. 1:16-cv-00261-GZS* |
| | ) | |
| *RANDALL LIBERTY,* | ) | |
| | ) | |
| *Respondent* | ) | |

*RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION*

Following a jury-waived trial in state court, petitioner Robert Lee Nelson, an inmate at the Maine State Prison, was convicted of murder. The Law Court affirmed the conviction on appeal, and the Superior Court denied petitioner's post-conviction petition, raising issues not relevant here. Petitioner did not request discretionary review of the post-conviction decision.

Petitioner has now filed in this court a petition pursuant to 28 U.S.C. § 2254 claiming that his federal constitutional rights were violated because the evidence was insufficient to find him guilty beyond a reasonable doubt. Petition (ECF No. 1). Following a review of the petition and the State's answer, I recommend that the court deny the petition.

## I.  Factual Background and Procedural History

Petitioner was indicted in September 2011 on one count for murder, 17-A M.R.S.A. § 201(1)(A), and on one count for possession of a firearm by a prohibited person, 15 M.R.S.A. § 393(1)(A-1)(3) (Class C). State Court Record ("R.") (ECF No. 11), filed with Respondent's Answer to the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Answer") (ECF No. 10), No. SKOSC-CR-2011-00317, Indictment.

Petitioner waived his right to a jury trial, and a seven-day bench trial was held in late November and early December of 2012. R. No. SKOSC-CR-2011-00317, Docket Record at 5-6. Petitioner testified at trial. Trial Tr. at 800-68. At the conclusion of the trial, petitioner entered a plea of guilty to the firearms possession charge, and, following a hearing conducted pursuant to M.R. Crim. P. 11, the court accepted the plea. Docket Record at 6-7. At the delivery of the verdict in December 2012, the court made its findings and entered a verdict of guilty on the murder charge. *Id.* at 7; R. No. SKOSC-CR-2011-00317, Verdict Tr.

The trial court found that the victim illegally sold his prescription Oxycodone, and that petitioner abused prescription drugs and regularly bought Oxycodone from the victim. Verdict Tr. at 4. The court found, based on circumstantial evidence, including evidence of opportunity, motive, means, and consciousness of guilt, that petitioner shot and killed the victim during a drug transaction in which petitioner sought drugs from the victim. *Id.* at 4, 12-35.

In March 2013, the court sentenced petitioner to a prison term of 45 years on the murder conviction and five years on the possession conviction, to be served concurrently with the sentence on the murder conviction. R. No. SKOSC-CR-2011-00317, Judgment and Commitment at 1.

Although petitioner filed an application for leave to appeal his sentence, he subsequently withdrew that appeal. *State of Maine v. Nelson*, Mem. 14-54 (Apr. 24, 2014) n.1. Petitioner did appeal from the conviction, arguing solely that the evidence was insufficient. R. No. Som-13-157, Brief of Appellant at 3. The Law Court affirmed the conviction in a memorandum of decision that states in relevant part:

> Contrary to Nelson's contentions, there is ample competent evidence, including all reasonable inferences, on which a reasonable fact-finder could find, beyond a reasonable doubt, that Nelson committed each element of murder. *See* 17-A M.R.S. § 201(1)(A); *State v. Williams*, 2012 ME 63, ¶ 49, 52 A.3d 911; *State v. Poulin*, 1997 ME 160, ¶ 15, 697 A.2d 1276; *State v. Creamer*, 359 A.2d 603, 606-07 (Me. 1976).

*Nelson*, Mem. 14-54.  Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.

In August 2014, petitioner filed a state court post-conviction petition.  R. No. SOMCD-CR-2014-00991, Docket Record at 1[1]  The Superior Court held an evidentiary hearing in December 2015, and in February 2016, the court denied the petition.  *Id.* at 3-4.  Petitioner did not request discretionary review by the Law Court.

Petitioner states that he placed the section 2254 petition in the prison mail system on May 21, 2016, and it was filed on May 23, 2016.[2]  Petition at [1], [15].  He alleges that his Fourteenth Amendment due process right was violated because the state court failed to presume that he was innocent until proven guilty, and the court found him guilty based on insufficient evidence. Petition at [5], [7].  Petitioner's specific claims are that the State did not prove its case beyond a reasonable doubt because: (1) there was a lack of DNA and physical evidence linking petitioner to the crime, Attachment (ECF No. 1-1) at [19-20]; (2) the State produced no murder weapon, Attachment at [20-21]; (3) the State did not fully account for the window of time during which the murder occurred, thus raising a reasonable doubt as to whether another person killed the victim, Attachment at [23-24]; and (4) there is evidence that petitioner was not at the scene of the crime when gunshots were heard at 2:15 p.m. and 3:00 p.m. that afternoon, Attachment at [25-26]. Petitioner alleges that he is innocent.  *Id.* at [19]; Petitioner's Reply to State's Answer (ECF No. 12) at [3].

---

[1] The state court record for the post-conviction proceeding contains only the docket sheet.  State Court Record ("R.") (ECF No. 11), filed with Respondent's Answer to the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Answer") (ECF No. 10), No. SOMCD-CR-2014-00991, Docket Record.  The State has explained that the 28 U.S.C. § 2254 petition "does not raise any grounds pertaining to the allegations raised in the state petition for post-conviction review . . . ."  Answer at [3] n.1.

[2] A review of the timing of petitioner's state and federal filings indicates that petitioner's section 2254 petition was filed within the one-year period of limitation, pursuant to 28 U.S.C. § 2244(d)(1)(A), and the State has not asserted any statute of limitations issue.

## II.  Applicable Legal Standards

### A.  The Standard Under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. § 2254(a), which provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

The Supreme Court has described section 2254 as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, --- U.S. ---, ---, 134 S. Ct. 10, 16 (2013).  Section 2254 "requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Federal habeas review of a state court adjudication on the merits is limited under section 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### 1.  Section 2254(d)(1)

Under section 2254(d)(1), either of two statutory standards may apply:

> In [*Williams v. Taylor*, 529 U.S. 362 (2000)], the Supreme Court gave independent meanings to the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1).  *See* [529 U.S. at 405].  The Court said that a state court decision

would be "contrary to" the Court's clearly established precedent if it "applie[d] a rule that contradicts the governing law set forth in [the Court's] cases." *Id.* "A state-court decision will also be contrary to th[e] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from our precedent." [*Id.* at 406]. . . . The Supreme Court in *Williams* held that a state court decision would involve an "unreasonable application of" clearly established Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Hurtado v. Tucker*, 245 F.3d 7, 15 (1st Cir. 2001) (quoting *Williams*, 529 U.S. at 405, 406, 413).

In *Cronin v. Comm'r of Prob.*, 783 F.3d 47 (1st Cir. 2015), the Court recognized that

an unreasonable application of clearly established federal law occurs when . . . the state court correctly identifies the governing legal principles, but (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply.

783 F.3d at 50-51 (quotation marks omitted).

"Sufficiency claims are generally evaluated under § 2254(d)(1) and we look to 'whether the state court decision constitutes an unreasonable application of clearly established Supreme Court case law.'" *O'Laughlin v. O'Brien*, 568 F.3d 287, 298 (1st Cir. 2009) (footnote omitted) (quoting *Hurtado*, 245 F.3d at 15).[3]  The First Circuit has announced the following as some of the guidelines that may be used to determine whether a state court decision was objectively unreasonable under section 2254(d)(1):

(1) The focus of the inquiry is on the state court decision;

(2) Even with the deference due by statute to the state court's determinations, the federal habeas court must itself look to 'the totality of the evidence' in evaluating the state court's decision;

(3) The failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the

---

[3] In *O'Laughlin v. O'Brien*, 568 F.3d 287, 298 n.14 (1st Cir. 2009), the First Circuit notes that sufficiency claims may also be analyzed under 28 U.S.C. § 2254(d)(2).

paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable;

(4) The failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable; and

(5) The absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness.

*Hurtado*, 245 F.3d at 18. "The ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable." *Id.* at 20.

The decision under review in this case is the Law Court's memorandum of decision, because the Law Court's decision is the final state court adjudication on the merits. *See Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 45 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

Although in petitioner's case, the Law Court did not recite the particular facts it found to be sufficient to support the conviction, the federal court may consider the trial court's factual findings: "[A] federal habeas court may look to a previous opinion as one example of a reasonable application of law or determination of fact." *Wilson v. Warden, Georgia Diagnostic Prison*, 834 F.3d 1227, 1239 (11th Cir. 2016).

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

6

*Id.*  The federal court's consideration of the state trial court's findings of fact does not alter the standard of review, which, pursuant to section 2254(d)(1), requires the court to review the Law Court's memorandum of decision as the final reasoned decision.[4]

The First Circuit, when analyzing a habeas claim of insufficient evidence under section 2254(d)(1), reviews the facts under a "clear and convincing" standard that is consistent with that set forth in 28 U.S.C. § 2254(e)(1).  *See Smith v. Dickhaut*, 836 F.3d 97, 101 (1st Cir. 2016) (citing *Linton v. Saba*, 812 F.3d 112, 116 (1st Cir. 2016)).  Section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A federal court may consider the evidentiary record as a whole to determine whether the state court decision was objectively unreasonable.  *See Hurtado*, 245 F.3d at 18 (noting that even

---

[4]Consideration of the trial court's findings of fact, notwithstanding that the Law Court decided the petitioner's sufficiency-of-the-evidence claim on the merits on appeal, does not constitute an application of the "look through" doctrine applied in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).  In *Ylst*, the Supreme Court held:  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. . . .  We look through the subsequent unexplained denials to that opinion, unless respondent has carried his burden of adducing strong evidence that one of the subsequent courts reached the merits of the federal claim."  *Id.* at 803, 806; *Brumfield v. Cain*, --- U.S. ---, ---, 135 S.Ct. 2269, 2276 (2015) (applying *Ylst* doctrine on review under 28 U.S.C. § 2254(d)(2) to "look through" a state supreme court's summary denial of a habeas petition to the state trial court's reasoned decision).

For three reasons, consideration by the federal court of the state trial court's findings of fact does not involve the "look through" doctrine in petitioner's case.  First, *Ylst* applies when the final state court decision is "unexplained," *id.*, whereas the Law Court's memorandum of decision provides an explanation.  Second, based on the Law Court's statement in the memorandum of decision that "there is ample competent evidence, including all reasonable inferences, on which a reasonable fact-finder could find" that petitioner committed each element of the offense, the Law Court appears to have based its decision on its own review of the record as a whole, as viewed by a reasonable factfinder, and not necessarily or solely on the evidence as found by the trial court.  Because the Law Court's decision did not necessarily rest solely on the trial court's findings of fact, the federal court's review of the Law Court's decision does not simply "look through" that decision to the trial court's findings.  Third, the First Circuit has noted that on habeas review, the federal court may "supplement the state courts' factual findings with other portions of the record that are consistent with them."  *Clements v. Clarke*, 592 F.3d 45, 47 (1st Cir. 2010).  Thus, although the federal court may consider whether the state trial court's factual findings, and the judgment based on those findings, constitute an objectively reasonable application of *Jackson*, the federal court reviews the Law Court's decision and the record as a whole.  *Hurtado v. Tucker*, 245 F.3d 7, 18 (1st Cir. 2001).

under a deferential standard of review, the federal court considers the "'totality of the evidence' in evaluating the state court's decision").

## 2. Section 2254(d)(2)

Although *Jackson*-based habeas challenges are generally addressed under 28 U.S.C. § 2254(d)(1), they may also be reviewed under section 2254(d)(2), which permits habeas relief when a state court adjudication on the merits resulted in an unreasonable determination of the facts in the state court proceeding. *O'Laughlin*, 568 F.3d at 298 & n.14.

The First Circuit has recognized that the standard of review under section 2254(d)(2) is "more petitioner-friendly" and less deferential than the standard set forth in 28 U.S.C. § 2254(e)(1), which requires the petitioner to rebut, by clear and convincing evidence, the presumption that state court factual findings are correct. *Smith*, 836 F.3d at 101 (noting that "the circuit courts of appeal disagree as to the proper interplay between §§ 2254(d)(2) and 2254(e)(1)"). In *Teti*, the First Circuit also noted the possible, but not yet definitively recognized, distinction that section 2254(d)(2) applies to the final decision of the state court, whereas section 2254(e)(1) applies to individual fact findings. *Teti*, 507 F.3d at 57-58 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003)).

The Supreme Court has noted: "We have not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)' . . . ." *Brumfield v. Cain*, --- U.S. ---, ---, 135 S. Ct. 2269, 2282 (2015) (quoting *Titlow*, 134 S. Ct. at 15). The First Circuit has held that when a petitioner is not entitled to relief under either standard, the court need not decide the relationship between section 2254(d)(2) and section 2254(e)(1). *Smith*, 836 F.3d at 101.

### B.  The Constitutional Standard on the Claim of Insufficient Evidence

"Habeas review involves the layering of two standards.  The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted."  *Hurtado*, 245 F.3d at 16.  In petitioner's case, as in *Hurtado*, the habeas claim of insufficient evidence is based on the constitutional right recognized in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See Hurtado*, 245 F.3d at 14-15 (noting that this was the first occasion on which the Court applied *Williams* "to a habeas petition challenging the sufficiency of the evidence under the *Jackson* standard").  In *Jackson*, the Supreme Court concluded that a claim of insufficient evidence is cognizable in a federal habeas action, and that

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson*, 443 U.S. at 319 (citation omitted).[5]  Thus, a habeas petitioner is not entitled to relief on a claim of insufficient evidence unless the state court's decision is either contrary to or an unreasonable application of *Jackson*.  *See Hurtado*, 245 F.3d at 15-16.

---

[5] In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held:

> [A] state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim.  Thus, assuming that state remedies have been exhausted, and that no independent and adequate state ground stands as a bar, it follows that such a claim is cognizable in a federal habeas corpus proceeding.

*Id.* at 321 (citations omitted).

9

"[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *see also King v. MacEachern*, 665 F.3d 247, 253-55 (1st Cir. 2011) (reviewing, in a section 2254 claim of insufficient evidence, the state law elements of the relevant crime of conviction).

"[A] federal habeas corpus court faced with a record . . . that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  [W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Linton*, 812 F.3d at 123 (citing *Jackson*, 443 U.S. at 324-25).  "As we have stated on multiple occasions, '[b]eyond a reasonable doubt does not require the exclusion of every other hypothesis; it is enough that all reasonable doubts be excluded.'"  *O'Laughlin*, 568 F.3d at 301 (quoting *Stewart v. Coalter*, 48 F.3d 610, 616 (1st Cir. 1995) (quotation marks omitted)).  "Where any reasonable jurist would conclude that evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, however, this Court must reverse because equipoise is tantamount to reasonable doubt." *Linton*, 812 F.3d at 123 (quotation marks omitted).

### III. Discussion

#### A.  Analysis Under the 28 U.S.C. § 2254(d)(1) "Contrary To" Standard: Whether the State Court Decision Was Contrary to *Jackson*

Petitioner's claim fails the "contrary to" prong of the standard set forth in section 2254(d)(1) because the Law Court did not apply a rule that contradicts *Jackson*.  *See Hurtado*, 245 F.3d at 15 (concluding that "this case presents a good example of one to which § 2254(d)(1)'s 'contrary to' prong does not apply: 'a run-of-the-mill state-court decision applying the correct legal rule from

[the Supreme Court's] cases to the facts of a prisoner's case'") (quoting *Williams*, 529 U.S. at 406). Although the Law Court did not cite *Jackson*, it applied the correct standard, as expressed in *Jackson*, when it affirmed on grounds that there was sufficient evidence, "including all reasonable inferences," for the trial court to find each element of murder.[6]  *Nelson*, Mem. 14-54.  The Law Court's decision comports with the Supreme Court's recognition in *Jackson* that the evidence is sufficient to support a criminal conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.

Petitioner's claim also fails the "contrary to" prong of section 2254(d)(1) because petitioner has not demonstrated that the Law Court reached a result contrary to *Jackson* on facts that are materially indistinguishable from those in *Jackson*.  *See Williams*, 529 U.S. at 406; *Hurtado*, 245 F.3d at 15.  In *Jackson*, the Supreme Court held that circumstantial evidence that a murder was premeditated, as defined under Virginia law, was sufficient.  *Jackson*, 443 U.S. at 324-25.  The facts in support of a finding of premeditation were that the two gunshots that killed the victim were fired at close range by a person experienced with the use of the murder weapon; the petitioner "drove without mishap" from one state to another after the murder, "a fact quite at odds with his story of extreme intoxication;" and "[s]hortly before the fatal episode, [the petitioner] had publicly expressed an intention to have sexual relations with the victim."  *Id.* at 325.  Regardless of whether the facts in petitioner's case are materially indistinguishable from the facts in *Jackson*, the result of petitioner's state court criminal prosecution is not contrary to *Jackson*, because in both cases

---

[6] The Law Court has recognized the standard set forth in *Jackson* for a claim of insufficiency of the evidence.  *See State v. Van Sickle*, 434 A.2d 31, 34 (Me. 1981) ("[W]henever sufficiency of the evidence is reviewed, our standard of review must meet the minimal constitutional standard set forth by the United States Supreme Court in [*Jackson*] . . .").  The Law Court's memorandum of decision in petitioner's appeal does not cite *Jackson*, but the decision nevertheless adjudicated the federal issue addressed in *Jackson*; "[t]he real question is not whether the state court opinion cited to any federal cases, but whether the opinion addresses a fairly raised federal issue."  *Clements v. Clarke*, 592 F.3d 45, 54 (1st Cir. 2010).  "A state court need not cite or be aware of Supreme Court precedents so long as 'neither the reasoning nor the result of the state-court decision contradicts them.'"  *Knight v. Spencer*, 447 F.3d 6, 12 (1st Cir. 2006) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)).

the respective courts concluded that the evidence was sufficient.  Thus, for this reason as well, petitioner's claim fails the "contrary to" prong of section 2254(d)(1).

### B.  Analysis Under the 28 U.S.C. § 2254(d)(1) "Unreasonable Application" Standard: Whether the State Court Decision was an Unreasonable Application of *Jackson*

#### 1.  State Law: Elements of the Crime of Murder

The *Jackson* standard must be applied with reference to 17-A M.R.S.A. § 201(1)(A), which is the relevant statute of conviction in petitioner's section 2254 case.  *See Jackson*, 443 U.S. at 324 n.16; *King*, 665 F.3d at 253-55.  Title 17-A M.R.S.A. § 201(1)(A) states:  "A person is guilty of murder if the person . . . intentionally or knowingly causes the death of another human being."  The Law Court has held:  [B]y legal definition under Maine law, a killing becomes unlawful and punishable as 'murder' on proof of 'any deliberate, cruel act, committed by one person against another, suddenly without any, or without a considerable provocation.'"  *State v. Lafferty*, 309 A.2d 647, 665 (Me. 1973) (quoting *State v. Neal*, 37 Me. 468, 470 (1854)).

#### 2.  The Evidence As Found By the Trial Court

The following is a summary of the facts found by the trial court.  *See Wilson*, 834 F.3d at 1239.

Petitioner abused prescription drugs and regularly bought Oxycodone from the victim.  Verdict Tr. at 4.  The victim died of a gunshot wound to the head on October 31, 2009.  *Id.* at 3-4, 10-12.  He was killed with a .30 caliber bullet, likely from a 38 or a .357 revolver.  *Id.* at 10.  His body was found in his truck, which was in a location where petitioner had bought drugs from him on at least one previous occasion.  *Id.* at 4-5.

Petitioner spoke by telephone with the victim during the morning and early afternoon of October 31st to arrange a meeting so that petitioner could obtain drugs from the victim.  *Id.* at 5.  Petitioner was the last person to have contact with the victim by telephone; that contact occurred

at 1:55 p.m.  *Id.* at 10-11.  Before the last phone contact, there were more than 30 calls to and from the victim's phone that day; after petitioner's last contact with the victim, there was no communication involving the victim's telephone until the victim's fiancée tried unsuccessfully to reach him at 3:36 p.m. and 4:04 p.m.  *Id.* at 11.

The medical examiner testified that the victim died sometime between 12:30 p.m. and 4:30 p.m.  *Id.* at 11.  The trial court found that the victim died between 2:00 and 3:30 p.m., "more likely closer to 2:00 than 3:30."  *Id.* at 11-12.  The court based this finding on the high volume of activity on the victim's telephone before 2:00 p.m.; the lack of activity on the phone after 2:00 p.m., except for his fiancée's unsuccessful efforts to reach him; and the lack of contact of any kind with the victim after 2:00 p.m.  *Id.* at 3, 11.

A witness testified that he lived across the street from the scene of the crime, that he heard a gunshot at 2:15 p.m. that day, and that the gunshot was very close to his home.  *Id.* at 7.  The trial court found that the shot the witness heard was the one that killed the victim, rather than a shot related to the hunting season.  *Id.* at 20.  The court's finding was based on the proximity of the gunshot to the witness's house, the witness's testimony that he heard no other gunshots before he left his home at 3:00 p.m., and the lack of any "reliable evidence of any other shots fired in the immediate vicinity of the scene."  *Id.*

The trial court found that petitioner was at the scene from 2:00 p.m. to 2:20 p.m.  *Id.* at 7.  The finding was based on testimony that petitioner was at the scene; that persons tried unsuccessfully to reach petitioner by telephone from just before 2:00 p.m. until he arrived back at his house; that after petitioner met with the victim, petitioner was home only long enough to wash and change his shirt; that petitioner spoke with someone at 2:28 p.m., while he was en route from his home to his daughter's birthday party, which was scheduled to begin at 2:00 p.m.; that he

13

arrived at the party at approximately 2:35 p.m.; and that the distances between the scene of the crime, petitioner's house, and the location of the party were very short. *Id.* at 6-7.

At the party, petitioner's "behavior was bizarre and he was under the influence of alcohol and drugs." *Id.* at 7-8. While there, "without reference to any particular issue," petitioner told someone that "no matter what happens, I want to thank you." *Id.* at 8.

After petitioner left the party, and while he was with an ex-girlfriend in her vehicle in a parking lot, he "snorted a crushed white pill that he obtained from a pill bottle;" petitioner did not have a prescription at the time, and he usually kept his pills in his pocket or in a plastic bag. *Id.*

After petitioner returned home, he visited his father, who lived on the same parcel as petitioner. *Id.* During that meeting, petitioner "said something to his father to the effect of, cops and, I wasn't here, you did not see me." *Id.*

Petitioner then went for a ride with his then girlfriend and, according to petitioner's trial testimony, they met with someone who informed petitioner that the victim had been killed. *Id.* at 8-9.

When petitioner and his girlfriend returned home, petitioner was interviewed by law enforcement. *Id.* at 9. In response to a question whether law enforcement would find gun residue on petitioner, petitioner told the detective a story that he later admitted was false; petitioner's story was that law enforcement would find residue on him because he had shot a friend's gun while he was helping the friend sight a rifle. *Id.* After the interview with law enforcement, petitioner approached his friend with the ruse and explained that he told it to law enforcement because he was concerned that his guns could be confiscated. *Id.* at 9-10. Not only was the ruse to law enforcement false, but Petitioner's explanation to the friend was also false, because law enforcement had confiscated petitioner's gun before petitioner approached his friend. *Id.* at 10.

14

After the friend told law enforcement that the story about petitioner sighting the friend's rifle was false, petitioner admitted to law enforcement that he had fabricated the story. *Id.*

The trial court concluded that circumstantial evidence established that petitioner killed the victim, based on the following evidence of opportunity, motive, consciousness of guilt, and means. *Id.* at 12-20.

The trial court concluded that opportunity was established based on its finding that petitioner was with the victim during the period when the victim was killed, and petitioner was "the only person observed at the scene after two p.m. that day," until the victim was found dead. *Id.* at 12.

The trial court concluded that the State demonstrated motive, although the State was not required to do so. *Id.* The court found that petitioner knew that the victim had drugs, and the two met "to conduct a drug transaction." *Id.* at 13. The trial court found that petitioner was "severely addicted to prescription drugs;" petitioner was seeking drugs on the evening before the victim's death, and during his meeting with the victim; and petitioner owed the victim money. *Id.* The trial court rejected petitioner's contention that he did not obtain drugs from the victim on October 31st, based on its findings that petitioner had more pills after his meeting with the victim than before; that petitioner had consumed a number of pills; that petitioner had a bottle of pills after his meeting with the victim, but there was no evidence that he had a bottle of pills before the meeting; that petitioner had no prescription for the pills; that the victim did not have a bottle of pills on his person when his body was found, although he had had a bottle of pills earlier that day; and that petitioner's girlfriend testified that she and petitioner finished the pills they had obtained from the victim. *Id.* at 13-14.

The trial court found evidence of consciousness of guilt based on four of petitioner's statements and actions. *Id.* at 14-16. First, the court found that petitioner's statement at the party that no matter what happened, he wanted someone to know he was grateful, "can be construed to suggest that something had happened that [petitioner] knew could alter or would alter his relationship with those in his life," including the person to whom he made the statement. *Id.* at 14. The court concluded: "Frankly, there is no credible evidence of record that would place the statement in another context." *Id.* at 14-15.

Second, the trial court found that petitioner's statement to his father, which occurred before petitioner met with the woman from whom he contended he learned about the victim's death, indicated consciousness of guilt. *Id.* at 15-16. Specifically, the court found that if petitioner were truly unaware of the victim's death, there would have been no reason for him to ask his father to deny that he saw him. *Id.* The trial court concluded: "[Petitioner's] statement to his father thus can be interpreted to establish that contrary to what he told law enforcement, he was aware of [the victim's] death" before he met with the woman he contends informed him of the death, "and [he] was attempting to avoid law enforcement because of his potential involvement." *Id.* at 16.

Third, the trial court found that Petitioner's false story to law enforcement that gun residue would be found on his hands because he had helped a friend sight a gun, and his false story to the friend as to why he needed the friend to go along with the ruse, indicated consciousness of guilt. *Id.* at 16-17.

Fourth, the trial court found that petitioner "acted surprised" in his first interview with law enforcement when police told him the victim was dead, and said: "I did not know that." *Id.* at 18. At trial, however, petitioner testified that he had learned about the death earlier that evening, just prior to the law enforcement interview. *Id.*

16

The trial court concluded that circumstantial evidence demonstrated that petitioner had the means to commit the crime. *Id.* at 19. The court found that in late 2008 or early 2009, petitioner possessed a .357 revolver, which was "consistent with the one that fired the deadly shot," and there was evidence from two witnesses that petitioner had a handgun. *Id.* at 10, 20.

Finally, the trial court assessed the evidence that might support a finding of reasonable doubt. *Id.* at 20-21. The court found that although the gun used to kill the victim had not been found during the investigation, the State established through circumstantial evidence that petitioner had the means to commit the murder. *Id.* at 21-22. The court found the evidence that petitioner possessed a .357 revolver to be "highly reliable," and that there was no evidence that petitioner disposed of or transferred ownership of the gun before the crime occurred. *Id.* at 22. The court concluded that the absence of a weapon was not fatal to the State's case, given the evidence that petitioner had the means to kill the victim. *Id.* at 23.

The trial court rejected the defense argument that someone other than petitioner could have committed the murder. *Id.* at 23-24. The court found that the victim intended to be at the scene for a limited time, based in part on the victim's statement to his fiancée before he met with petitioner. *Id.* The court found that there was "no credible evidence of record that anyone else was at the scene or was observed at the scene between the time [petitioner] arrived" and when the victim was found dead. *Id.* at 24. The court found that the fact that a white vehicle was seen at the location was insignificant, because that occurred before petitioner met with the victim. *Id.* The court concluded that "the theoretical possibility that another might have killed [the victim] does not generate reasonable doubt." *Id.* at 25.

The trial court also concluded that the lack of evidence of petitioner's DNA at the scene was insignificant, because petitioner admitted that he was there, and several witnesses testified

that he was there, including one "particularly credible" witness who testified that he saw petitioner outside petitioner's vehicle. *Id.* at 25-26, 33.

The court found that petitioner lacked credibility, based on several points in petitioner's testimony and prior inconsistent statements. *Id.* at 26-29. First, the court noted that petitioner testified at trial that he had no motive to kill the victim because he had sufficient money and drugs, but he had previously told law enforcement that his reason for meeting with the victim was to tell the victim that he did not have the $35 he owed him. *Id.* Second, the court found that petitioner had told various persons differing stories about why he was late for the 2:00 p.m. party, including that he needed to retrieve gifts, that he had soiled his clothes while working at a wood lot that morning, and, in a later recorded statement to law enforcement, that he had encountered a problem with his car's brake fluid. *Id.* at 29. The court concluded that the explanation about the brake fluid was troubling and significant because petitioner did not provide it either to law enforcement in the initial investigation, or to his then girlfriend when he returned home to change his clothes before the party. *Id.* at 30. The court noted that petitioner may have realized only later that he would need to explain why he had to change his shirt after meeting with the victim, when he had said his intent was to go from the meeting with the victim directly to the party. *Id.* at 30-31. Third, the court found that petitioner had falsely told law enforcement that he did not use drugs, that the victim had loaned him money, and that he did not know, before his first interview with law enforcement, that the victim was dead. *Id.* at 31. Finally, petitioner falsely told law enforcement that the evening before the murder, he was at home by 10:30 or 11:00 p.m., and that the previous Friday, he was shooting at a pit with a friend. *Id.* at 32-32.

In contrast, the trial court found the testimony of the State's witnesses credible. *Id.* at 32-34. In addition, the court found that the documentary evidence, particularly telephone records, the

18

accuracy of which was not challenged, supported the court's finding that the victim was killed when petitioner was with him.  *Id.* at 34.

The trial court concluded that the State had proven beyond a reasonable doubt that petitioner intentionally or knowingly killed the victim, and on that basis the court entered a guilty verdict.  *Id.* at 35.

### 3.   Analysis of Petitioner's Claims

Although under section 2254(d)(1), a federal court reviews the state court's final decision, and it reviews the evidence as a whole, this review necessarily begins with an analysis of the record as to each of petitioner's specific claims.

### a.   The DNA Evidence

Petitioner argues that the State's failure fully to investigate other individuals' DNA found in the victim's truck, particularly when the State had no DNA or other physical evidence of petitioner, is sufficient to establish that the state court's decision was an unreasonable determination of federal law.  Attachment at [19].

Counsel addressed the issue of reasonable doubt and an alternate suspect hypothesis at trial, and the court addressed this in its findings.  Trial Tr. at 731-36, 925; Verdict Tr. at 23-25.  Counsel cross-examined a Maine State Police detective, who testified that petitioner's DNA was not found in the truck, but DNA from the victim and two unknown individuals was found on two pill bottles in the glove box and on the glove box button.  Trial Tr. at 731-34.  The detective testified that it was standard practice to run the DNA profiles through a database to see if they matched the DNA profiles of any other persons; he testified that the report did not indicate that this had been done in this case.  *Id.* at 735.  The detective also testified that although the victim had a limited number of drug customers, law enforcement did not try to collect DNA samples from them.  *Id.* at 735-36.

The trial court noted that "the quality of the investigation [had] been challenged to some degree in this case," but the court determined that the issue was not whether the investigation was ideal, but rather whether the State had "produced sufficient credible evidence to convince the Court beyond a reasonable doubt that [petitioner] committed the offense." Verdict Tr. at 21. The court explained that its rejection of petitioner's hypothesis of another perpetrator was based on specific findings, including that the victim intended to be at the scene for only a limited time, which indicated that the victim did not intend to meet with many individuals; and that there was no credible evidence that anyone other than petitioner was at the scene during the period within which the victim was killed. *Id.* at 24-25. The court also concluded that the fact that petitioner's DNA was not found at the scene was insignificant, because petitioner admitted that he was there, and several witnesses testified that he was there. *Id.* at 26.

Petitioner did not argue on appeal that the verdict was unsupported because it was based on circumstantial evidence; rather, petitioner argued that the lack of DNA or other physical evidence required the trial court to analyze the circumstantial evidence more closely, and the court failed to do so. R. No. Som-13-157, Brief of Appellant at 8-9. Petitioner argued that in several respects, the circumstantial evidence equally could have supported a verdict of not guilty, and the trial court failed to apply the presumption of innocence. *Id.* at 9-11, 13.

Petitioner's argument regarding the DNA evidence fails. The court need not exclude all hypotheses as to who committed the crime. *See O'Laughlin*, 568 F.3d at 301. The court's findings supported its rejection of the alternate suspect hypothesis. Verdict Tr. at 23-25. Specifically, the court found that the crime likely occurred close to 2:00 p.m., based on the victim's telephone records. *Id.* at 11. It also found that the victim intended to be at the scene for a limited time only, based on statements the victim made to his fiancée. *Id.* at 24. The court found that there was no

credible evidence that anyone else was at the scene during the relevant time period. *Id.* Based on these findings, the evidence was not in equipoise, and the State was not required to introduce positive evidence of the identity of the individuals whose DNA was on the glove box and on the pill bottles in the glove box in order to exclude reasonable doubt that petitioner committed the murder. *See Linton*, 812 F.3d at 123; *O'Laughlin*, 568 F.3d at 301.

### b.  The Lack of a Murder Weapon

Petitioner argues that the lack of evidence of the murder weapon raises a reasonable doubt. Attachment at [20.]  Specifically, he argues that the State produced no murder weapon, and there is insufficient evidence that petitioner possessed a .357 revolver at the time of the murder. *Id.* at [20-21.]   Petitioner contends that the evidence supports his assertion that the .357 he possessed was in a car that petitioner's ex-girlfriend used after she moved out of his house, that he discovered the gun when she returned the car to him, and that a later girlfriend did not see a gun in the car when she cleaned the car out several months before the victim was killed. *Id.* at [20].

Petitioner points to evidence that his girlfriend at the time of the crime searched petitioner's house for a gun, but she did not find any; that the ammunition that police found on a search of petitioner's house, and bullets and casings found in a shooting area near the house, were not consistent with a .357 revolver or any other weapon that could have been used in the murder; that no gunshot residue was found on petitioner's hands or clothing or in his car;  that a rifle found in petitioner's house was ruled out as the murder weapon; that the State had not positively determined that the murder weapon was of the type that the State alleged petitioner possessed; and that the State investigated two guns that were not connected to petitioner and yet could not be ruled out as the murder weapon. *Id.* at [20-21.]

The trial court noted that petitioner could be convicted without production of the weapon; rather, the issue is "whether the State has established through circumstantial evidence" that petitioner had "the means to commit the murder." Verdict Tr. at 21-22. The court's finding that petitioner possessed a gun was based on witness testimony that the court concluded was "highly reliable." *Id.* at 22. In contrast, the court noted, there was no evidence that petitioner transferred ownership of the .357 revolver to someone else before the victim was killed, and the court found petitioner's testimony to be unreliable. *Id.* at 22-23.

Petitioner raised this argument on appeal in the context of his broader argument that physical evidence of many types was lacking. R. No. Som-13-157, Brief of Appellant at 8, 31.

Petitioner's argument fails because the trial court's finding that he had possession of a .357 revolver and, thus, the means to commit the crime, is based on a credibility determination and a reasonable inference that petitioner possessed the gun at the time of the murder. "[A] federal habeas court ordinarily refrains from revisiting credibility determinations . . . ." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001). The *Jackson* standard permits the trial court "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319-20.

### c.  The Gunshot Evidence

Petitioner does not dispute that a gunshot occurred at 2:15 p.m. Attachment at [25]. Rather, he contends that because a neighbor heard a shot at 2:15 p.m., and another couple heard a shot at about 3:00 p.m., and there is evidence that petitioner was not at the scene at those times, insufficient evidence exists that he murdered the victim. *Id.* at [25-26]. Petitioner notes that the investigation did not include an inquiry into what other neighbors heard. *Id.* at [26]. He argues that it should have, given that there were reports of two gunshots within the time frame of the

22

victim's death, that it was the first day of the deer hunting season, and that the detective conceded at trial that the failure to canvas the neighborhood could be considered a mistake.  *Id.*; Trial Tr. at 707.

Petitioner argued on appeal that the trial court's finding that there was "no reliable evidence" of any shots other than the one at 2:15 p.m. was in error, because a detective testified that a couple (who the victim's fiancée testified lived nearby) told him they heard a gunshot at 3:00 p.m. R. No. Som-13-157, Brief of Appellant at 12; Verdict Tr. at 20; Trial Tr. at 132, 704.)  Additionally, the neighbor who testified to the 2:15 p.m. gunshot had left his house by 3:00 p.m., and thus would not have heard the 3:00 p.m. gunshot.  Brief of Appellant at 12; Trial Tr. at 103-05.

Petitioner argues that his girlfriend's testimony, which was that he left home for the party at approximately 2:15 p.m. after having been home for approximately five or ten minutes, establishes that petitioner was not at the scene at 2:15 p.m.  Attachment at [26]; Trial Tr. at 596, 602.  Petitioner contends that the girlfriend's testimony amounts to undisputed evidence and generates reasonable doubt.  Attachment at [26].

Petitioner's claim regarding the 2:15 p.m. gunshot lacks merit because the trial court was entitled to weigh all of the evidence and draw reasonable inferences when it found that petitioner was at the scene of the crime from 2:00 p.m. to 2:20 p.m.  *See Jackson*, 443 U.S. at 319.  The court's finding was based on the testimony of a number of witnesses, on the telephone records, and upon consideration of evidence of the distances between the locations at issue.  Verdict Tr. at 6-7.  The court specifically focused on a telephone record that indicated that someone had tried unsuccessfully to reach petitioner at 2:08 p.m.; that petitioner spoke with that person at 2:28 p.m., while petitioner was en route to the party; and that between petitioner's meeting with the victim and his departure for the party, he was home only long enough to wash and change his shirt.  *Id.*

The girlfriend's testimony on which petitioner focuses is equivocal, as the times she gave for petitioner's return home and departure for the party were approximate, but regardless of that, the trial court has the responsibility to resolve conflicting evidence, and the trial court based its finding on other evidence. *See Jackson*, 443 U.S. at 319.  Petitioner's argument as to the gunshot evidence, therefore, lacks merit.

### d.  The Lack of a Full Accounting for the Window of Time During Which the Victim Was Killed

Petitioner argues that the State's failure fully to account for the window of time when the crime could have occurred raises a reasonable doubt.  Attachment at [23-24].  Specifically, Petitioner's claim is focused on the period between 2:00 and 4:00 p.m. on the afternoon of the murder.  *Id.* at [23].  Petitioner admits that he was at the scene with the victim at 2:00 p.m., but he argues that because the State failed to account for what happened during the entire period from 2:00 to 4:00 p.m., there is no evidence to support the trial court's finding that he was the only person at the scene at the relevant time.  *Id.*  He argues that law enforcement could have set up a checkpoint to ask passersby if they observed anything during the relevant time, or they could have gone door to door to inquire of local residents.  *Id.*  Petitioner also points out that a State's witness or witnesses testified that a white car was at the scene between 1:00 and 2:00 p.m., that the victim told his son on the morning of the murder that he planned to meet with at least three drug associates that day to conduct drug transactions, and that the victim's cell phone records show that the victim was reaching out to a number of drug buyers that day.  *Id.* at [24].

Petitioner made this argument on appeal.  R. No. Som-13-157, Brief of Appellant at 10-11.

Petitioner's argument fails because, as discussed above, the court found that petitioner was present at the scene of the crime when the victim was killed; that the victim intended to be at the scene for a limited time; and that there was no credible evidence that anyone else was at the scene

during the relevant period.  Verdict Tr. at 11-12, 24.  Based on these findings, it was unnecessary fully to account for the entire period from 2:00 p.m. to 4:00 p.m. in order to exclude reasonable doubt.  *See O'Laughlin*, 568 F.3d at 301.

### e.   Conclusion Under 28 U.S.C. § 2254(d)(1) "Unreasonable Application" Standard Based on the Totality of the Evidence

Although the federal court reviews the evidence as a whole as it reviews the Law Court's decision, the federal court may consider the trial court's factual findings and conclusions of law as an example of a reasonable application of law or determination of fact.  *See Wilson*, 834 F.3d at 1239.  In this case, in light of the record as a whole, the trial court's findings and conclusions constitute an example of a reasonable application of both fact and law.  The Law Court's determination, that a rational trier of fact could have found that petitioner had committed each element of the crime of murder, was not an unreasonable application of *Jackson* under section 2254(d)(1).  *See Hurtado*, 245 F.3d at 18.  Petitioner's claim, therefore, fails under section 2254(d)(1).

### C.  Analysis Under the 28 U.S.C. § 2254(d)(2) Standard: Whether the State Court Decision was Based on an Unreasonable Determination of the Facts

An analysis under 28 U.S.C. § 2254(d)(2) yields the same result as under section 2254(d)(1), because, for the same reasons discussed above in the analysis under section 2254(d)(1), the Law Court's decision was not based on an unreasonable determination of the facts.  Because petitioner's claim fails under section 2254(d)(2), petitioner also fails to demonstrate that he has met his burden under section 2254(e)(1), which is more deferential to the state court than section 2254(d)(2).  *See Smith*, 836 F.3d at 101.

## IV. Conclusion

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend that the court deny the petition for habeas relief under 28 U.S.C. § 2254 (ECF No. 1), and that the court deny a certificate of appealability, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of December, 2016.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge